KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

July 8, 2016

**Via Electronic Case Filing**

Hon. Peter R. Marksteiner
Circuit Executive and Clerk of Court
United States Court of Appeals
  for the Federal Circuit
717 Madison Place, N.W., Room 401
Washington, D.C. 20439

Re:    *Smartflash LLC v. Apple Inc.*, No. 16-1059

Dear Mr. Marksteiner:

I write pursuant to Rule 28(j) to address *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, No. 2015-1763 (Fed. Cir. June 27, 2016). *BASCOM* confirms that the Smartflash claims at issue in this case contain an "inventive concept" and are accordingly patent-eligible under § 101. That decision makes clear, in particular, that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." Slip op. 15; *see* Smartflash Br. 34-35.

The *Alice* "step two" analysis in *BASCOM* applies to the Smartflash claims. Even on the premise that the Smartflash claims are directed to an abstract idea ("paying for and controlling access to goods" in Apple's formulation), they do not "merely recite [that] abstract idea" nor do they "preempt all ways" of paying for and controlling access to digital content. Slip op. 16. On the contrary, the claims "recite a specific, discrete implementation" – concrete devices – for purchasing, downloading, storing, and conditioning access to digital content securely. *Id.*; *see* Smartflash Br. 28-29. As in *BASCOM*, the "patent describes how its particular arrangement of elements is a technical improvement over prior art ways" of distributing digital content, thus "improv[ing] an existing technological process." Slip op. 16-17; *see* Smartflash Br. 29-30 (describing claims' "specific technical choices that provide distinct advantages over alternatives").

*BASCOM* also confirms that the district court correctly found *DDR* to be controlling. The Smartflash patents provide a "technical solution to a problem unique to the Internet," slip

Kellogg, Huber, Hansen, Todd, Evans & Figel, p.l.l.c.

Peter R. Marksteiner
July 8, 2016
Page 2

op. 17, that is, rampant piracy of digital content, *see* Smartflash Br. 23.  The patents "claim[ ] a technical way to satisfy an existing problem" for digital content providers – a "technology-based solution . . . that overcomes existing problems" with digital content distribution – not "an abstract-idea-based solution implemented with generic technical components in a conventional way."  Slip op. 18; *see* Smartflash Br. 31-34.  Like the patents in *DDR* and *BASCOM*, Smartflash claims a "software-based invention[ ] that improve[s] the performance of the computer system itself."  Slip op. 18 (alterations in original); *see* Smartflash Br. 34.  The claims are accordingly patent-eligible.

Respectfully submitted,

/s/ *Aaron M. Panner*

Aaron M. Panner
*Counsel for Appellees*

cc:  Counsel of Record (via ECF and e-mail)

# ATTACHMENT

# United States Court of Appeals
# for the Federal Circuit

---

**BASCOM GLOBAL INTERNET SERVICES, INC.,**
*Plaintiff-Appellant*

**v.**

**AT&T MOBILITY LLC, AT&T CORP.,**
*Defendants-Appellees*

---

2015-1763

---

Appeal from the United States District Court for the Northern District of Texas in No. 3:14-cv-03942-M, Judge Barbara M.G. Lynn.

---

Decided: June 27, 2016

---

ARUN SUBRAMANIAN, Susman Godfrey LLP, New York, NY, argued for plaintiff-appellant. Also represented by DANIEL J. SHIH, JORDAN CONNORS, Seattle, WA.

BRYANT C. BOREN, JR., Baker Botts LLP, Palo Alto, CA, argued for defendants-appellees. Also represented by RYAN BANGERT, JOHNSON KURIAKOSE KUNCHERIA, KURT M. PANKRATZ, Dallas, TX; MICHAEL HAWES, Houston, TX.

---

Before NEWMAN, O'MALLEY, and CHEN, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* CHEN.

Opinion concurring in the result filed by *Circuit Judge* NEWMAN.

CHEN, *Circuit Judge*.

BASCOM Global Internet Services, Inc. appeals from the grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), in which the United States District Court for the Northern District of Texas held that BASCOM failed to state a claim upon which relief can be granted because the claims of U.S. Patent No. 5,987,606 are invalid as a matter of law under 35 U.S.C. § 101. BASCOM has alleged that the claims of the '606 patent contain an "inventive concept" in their ordered combination of limitations sufficient to satisfy the second step of the Supreme Court's *Alice* test. We find nothing in the intrinsic record to refute that allegation as a matter of law. We therefore *vacate* the district court's order dismissing BASCOM's complaint, and *remand* for further proceedings.

BACKGROUND

The '606 patent was filed March 19, 1997. Back in 1997, the Internet was known to contain information that consumers, students, and businesses wanted to access. '606 patent, 1:16–17. As the patent describes in the "Background of the Present Invention" section, web browsers "such as the Netscape Navigator™ or the Microsoft Explorer™" allowed users to access websites in the form of HTML files. *Id.* at 1:18–24; *see also id.* at 1:23–25 ("Other software utilities for accessing Internet content include News Groups, FTPs, IRC chat rooms and e-mail."). Some websites, however, contained information deemed unsuitable for some users. Corporations had the need to prevent their employees from accessing websites with certain types of information, such as "entertainment oriented sites," while allowing them to continue to access

"technical or business sites," and parents had the need to prevent their family from accessing websites containing "sexually explicit or other objectionable information." *Id.* at 1:30–40.

The computer industry responded to this need by developing a software tool that allowed control over the type of information received over the Internet. The software tool inspected a user's request to access a website and applied one or more filtering mechanisms: "exclusive filtering ('black-listing') which prevents access to all sites on a predetermined list of Internet sites; inclusive filtering ('white-listing') which allows access only to a predetermined list of Internet sites; and word-screening or phrase-screening which prevents access to web site 'pages' which contain any word or phrase on a predetermined list." *Id.* at 1:41–50.

According to the '606 patent, filtering software was first placed on local computers, such that each local computer had its own tool for filtering websites (or other Internet content) requested by the operator of the computer. *Id.* at 1:58–63, Figure 8. Although the filtering software worked for its intended purpose, there were logistical problems with locating a tool for filtering Internet content on each local computer: (1) "it is subject to be modified or thwarted by a computer literate end-user, such as a teenager or corporate employee"; (2) "it is difficult and time consuming to install on every end-user's client machine"; (3) "[it] is dependent upon individual end-user hardware and operating systems and requires modified software for different end-user platforms"; and (4) "the client database [] must be updated frequently to track changes in the content of various Internet sites" which "requires frequent downloads from the Internet or disk updates." *Id.* at 2:1–12.

To overcome some of the disadvantages of installing filtering software on each local computer, another prior

art system relocated the filter to a local server. *Id.* at 2:13–23, Figure 9. For example, a corporation with one connection to the Internet might have placed a server between the computers of its employees and the Internet connection. In this configuration, many individual computers with different hardware and operating systems were connected to one local server over a local area network. When employees at their individual computers requested websites from the Internet, the local server would filter all requests for Internet content. *Id.* "[A] computer literate end-user" therefore could no longer easily "modify or thwart" the filtering tool to gain access to blocked websites. *Id.* at 2:25–30. However, the one-size-fits-all filter on the local server was not ideal because "a single set of filtering criteria is often not appropriate for all of the end-users." *Id.* at 2:20–23. This solution for filtering Internet content also "require[d] time-consuming local service to initiate and maintain" and "software implementing the filtering functions [was] typically tied to a single local area network or a local server platform." *Id.* at 2:23–35.

Finally, some Internet Service Providers (ISPs), such as "America Online," installed a filter on their remote servers, which allowed the ISP to prevent its subscribers from accessing certain websites. *Id.* at 2:36–39. However, this solution continued to use a single set of filtering criteria for all requests for websites from all of its subscribers. *Id.* at 2:39–49.

The '606 patent describes its invention as combining the advantages of the then-known filtering tools while avoiding their drawbacks. The claimed filtering system avoids being "modified or thwarted by a computer literate end-user," and avoids being installed on and dependent on "individual end-user hardware and operating systems" or "tied to a single local area network or a local server platform" by installing the filter at the ISP server. *Id.* at 2:1–12, 2:23–35, 2:55–65. And, unlike the filtering tools that

existed on local servers and remote ISP servers at the time, the claimed filtering tool retains the advantage of a filtering tool that is located on each local computer; individuals are able to customize how requests for Internet content from their own computers are filtered instead of having a universal set of filtering rules applied to everyone's requests. *Id.* at 2:52–65 ("[T]he present invention . . . provid[es] an Internet access system which: . . . allows users to select filtering schemes, such as inclusive or exclusive filtering, and filtering elements, such as ISP provided inclusive-lists or exclusive-lists, or their own customized inclusive-lists or exclusive-lists . . . .").

The claimed invention is able to provide individually customizable filtering at the remote ISP server by taking advantage of the technical capability of certain communication networks. In these networks, the ISP is able to associate an individual user with a specific request to access a website (or other Internet content), and can distinguish that user's requests from other users' requests. One way that the ISP is able to make this association, as described in the '606 patent, is by requiring each user to first complete a log-in process with the ISP server. *Id.* at 4:35–38. After a user has logged in, the ISP server can associate the user with a request to access a specific website. *Id.* at 5:60–62 ("In the TCP/IP protocol, each Internet access request or 'packet' includes the [website] from which content is requested."). Because the filtering tool on the ISP server contains each user's customized filtering mechanism, the filtering tool working in combination with the ISP server can apply a specific user's filtering mechanism to the websites requested by that user. *Id.* at 4:35–50. To summarize, the ISP server receives a request to access a website, associates the request with a particular user, and identifies the requested website. The filtering tool then applies the filtering mechanism associated with the particular user to the requested website to determine whether the user associ-

ated with that request is allowed access to the website. The filtering tool returns either the content of the website to the user, or a message to the user indicating that the request was denied. The '606 patent describes its filtering system as a novel advance over prior art computer filters, in that no one had previously provided customized filters at a remote server.

The claims of the '606 patent generally recite a system for filtering Internet content. The claimed filtering system is located on a remote ISP server that associates each network account with (1) one or more filtering schemes and (2) at least one set of filtering elements from a plurality of sets of filtering elements, thereby allowing individual network accounts to customize the filtering of Internet traffic associated with the account. For example, one filtering scheme could be "a word-screening type filtering scheme" and one set of filtering elements (from a plurality of sets) could be a "master list[] of disallowed words or phrases together with [an] individual [list of] words, phrases or rules." *Id.* at 4:30–35. According to BASCOM, the '606 patent contains two groups of claims: a first group that is limited to individual-customizable filtering on a remote ISP server, and a second group that is further limited to a hybrid filtering scheme implemented on the ISP server comprised of a master-inclusive list, an individual-customizable set of exclusive lists, and an individual-customizable set of inclusive lists. For the individually customizable filtering claims, BASCOM points to claim 1 as instructive.

> 1. A content filtering system for filtering content retrieved from an Internet computer network by individual controlled access network accounts, said filtering system comprising:
>
>> a local client computer generating network access requests for said individual controlled access network accounts;

at least one filtering scheme;

a plurality of sets of logical filtering elements; and

a remote ISP server coupled to said client computer and said Internet computer network, said ISP server associating each said network account to at least one filtering scheme and at least one set of filtering elements, said ISP server further receiving said network access requests from said client computer and executing said associated filtering scheme utilizing said associated set of logical filtering elements.

*Id.* at 6:62–7:10. For the hybrid filtering scheme claims, BASCOM points to claim 23, which depends on claim 22, as instructive.

22. An ISP server for filtering content forwarded to controlled access network account generating network access requests at a remote client computer, each network access request including a destination address field, said ISP server comprising:

a master inclusive-list of allowed sites;

a plurality of sets of exclusive-lists of excluded sites, each controlled access network account associated with at least one set of said plurality of exclusive-lists of excluded sites; and

a filtering scheme, said filtering scheme allowing said network access request if said destination address exists on said master inclusive-list but not on said at least one associated exclusive-list, whereby said controlled access accounts may be

> uniquely associated with one or more sets
> of excluded sites.

23. The ISP server of claim 22 further comprising:

> a plurality of inclusive-lists of allowed
> sites, each controlled access user associat-
> ed with at least one of said plurality of in-
> clusive-lists of allowed sites, said filtering
> program further allowing said network ac-
> cess request if said requested destination
> address exists on said at least one associ-
> ated inclusive-list.

*Id.* at 8:63–9:18.

BASCOM sued AT&T Inc. for patent infringement, added AT&T Mobility LLC and AT&T Corp. (collectively, AT&T) as defendants, and then dismissed AT&T Inc. from the case. AT&T moved to dismiss BASCOM's complaint under FRCP 12(b)(6), on the basis that each claim of the '606 patent was invalid under 35 U.S.C. § 101. Applying the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), AT&T argued that the claims were directed to the abstract idea of "filtering content," "filtering Internet content," or "determining who gets to see what," each of which is a well-known "method of organizing human activity" like the intermediated settlement concept that was held to be an abstract idea in *Alice*. *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 107 F. Supp. 3d 639, 646 (N.D. Tex. 2015) (*District Court Order*). AT&T analogized the idea of filtering content to a parent or librarian forbidding children from reading certain books, and argued that performing the filtering on the Internet does not make the idea nonabstract. Finally, AT&T pointed to each individual limitation of the claims and argued that none of the limitations transforms the abstract idea of filtering content into patent-eligible subject matter because they do no more than recite rou-

tine and conventional activities performed by generic computer components.

BASCOM responded by arguing that the claims of the '606 patent are not directed to an abstract idea because they address a problem arising in the realm of computer networks, and provide a solution entirely rooted in computer technology, similar to the claims at issue in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). BASCOM characterized the recent Supreme Court and Federal Circuit decisions invalidating claims under § 101 as focusing on claims that are directed to a longstanding fundamental practice that exists independent of computer technology. BASCOM asserted that its claims are different because filtering Internet content was not longstanding or fundamental at the time of the invention and is not independent of the Internet. Finally, BASCOM argued that, even if the lower court found that the claims are directed to an abstract idea, the inventive concept is found in the ordered combination of the limitations: a "special ISP server that receives requests for Internet content, which the ISP server then associates with a particular user and a particular filtering scheme and elements." *District Court Order*, 107 F. Supp. 3d at 652–53.

The district court agreed with AT&T. The district court found that the claims were directed to the abstract idea of "filtering content" because "content provided on the Internet is not fundamentally different from content observed, read, and interacted with through other mediums like books, magazines, television, or movies." *Id.* at 650. In its search for an "inventive concept," the district court first determined that no individual limitation was inventive because each limitation, in isolation, was a "well-known, generic computer component[ ]" or a standard filtering mechanism. *Id.* at 654. The district court then determined that the limitations in combination were not inventive either because "[f]iltering software, appar-

ently composed of filtering schemes and filtering elements, was well-known in the prior art" and "using ISP servers to filter content was well-known to practitioners." *Id.*   The district court also noted that the absence of specific structure for the generic computer components "raises the likelihood that such claims could preempt every filtering scheme under the sun." *Id.* at 655.

BASCOM appeals.   We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### STANDARD OF REVIEW

We review a district court's dismissal for failure to state a claim under the law of the regional circuit. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).   The Fifth Circuit reviews challenges to a dismissal for failure to state a claim under FRCP 12(b)(6) de novo, taking the allegations of the complaint to be true. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).   We review the district court's determination of patent-eligibility under § 101 de novo. *DDR*, 773 F.3d at 1255.

### DISCUSSION

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.   The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)) (internal brackets omitted). The Supreme Court has also consistently held that § 101 provides a basis for a patentability/validity determination that is independent of—and on an equal footing with— any other statutory patentability provision. *Mayo*, 132 S.

Ct. at 1303–04 (citing *Bilski v. Kappos*, 561 U.S. 593 (2010); *Diamond v. Diehr*, 450 U.S. 175 (1981), *Parker v. Flook*, 437 U.S. 584 (1978); *Gottschalk v. Benson*, 409 U.S. 63 (1972); H.R. Rep. No. 82-1923, at 6 (1952)). Courts may therefore dispose of patent-infringement claims under § 101 whenever procedurally appropriate. *See DDR*, 773 F.3d at 1263; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1351 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015). In *Mayo*, the Supreme Court set forth a two-step analytical framework to identify patents that, in essence, claim nothing more than abstract ideas. The court must first "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. If so, the court must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1298, 1297).

We have found software-related patents eligible under both steps of the test *Alice* sets out. We found a patent to a particular improvement to a database system patent-eligible under step one in *Enfish LLC v. Microsoft Corp.*, 2016 WL 2756255, at *8 (Fed. Cir. May 12, 2016). There, we found claim language reciting the invention's specific improvements to help our determination in step one of the *Alice* framework that the invention was directed to those specific improvements in computer technology. But we also recognized that, "in other cases involving computer-related claims, there may be close calls about how to characterize what the claims are directed to." *Id.* "In such cases," we noted, "an analysis of whether there are arguably concrete improvements in the recited computer technology could take place under step two." *Id.* That is, some inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the *Alice* analysis, it might become clear that the

specific improvements in the recited computer technology go beyond "well-understood, routine, conventional activit[ies]" and render the invention patent-eligible. *See Alice*, 134 S. Ct. at 2359. We took this step-two path in *DDR*. 773 F.3d at 1259 ("When the limitations of the . . . claims are taken together as an ordered combination, the claims recite an invention that is not merely the routine or conventional use of the Internet.").

The claims of the '606 patent are directed to filtering content on the Internet. Specifically, claim 1 is directed to a "content filtering system for filtering content retrieved from an Internet computer network." '606 patent, 6:62–64. Claim 22 similarly is directed to an "ISP server for filtering content." *Id.* at 8:63. The specification reinforces this notion by describing the invention as relating "generally to a method and system for filtering Internet content." *Id.* at 1:7–11. We agree with the district court that filtering content is an abstract idea because it is a long-standing, well-known method of organizing human behavior, similar to concepts previously found to be abstract. *See Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (holding that "tracking financial transactions to determine whether they exceed a pre-set spending limit (i.e., budgeting)" is an abstract idea that "is not meaningfully different from the ideas found to be abstract in other cases . . . involving methods of organizing human activity"); *see also Content Extraction*, 776 F.3d at 1347 (finding that "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" was an abstract idea because "data collection, recognition, and storage is undisputedly well-known" and "humans have always performed these functions"); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (finding that "a process of organizing information through mathematical correlations" is an abstract idea). An abstract idea on "an Internet computer

network" or on a generic computer is still an abstract idea. *See Intellectual Ventures I*, 792 F.3d at 1368 n.2 (collecting cases).

BASCOM argues that the claims are directed to something narrower: the specific implementation of filtering content set forth in the claim limitations. Specifically, BASCOM asserts that claim 1 is "directed to the more specific problem of providing Internet-content filtering in a manner that can be customized for the person attempting to access such content while avoiding the need for (potentially millions of) local servers or computers to perform such filtering and while being less susceptible to circumvention by the user," and claim 23 is directed to "the even more particular problem of structuring a filtering scheme not just to be effective, but also to make user-level customization remain administrable as users are added instead of becoming intractably complex." Appellant's Br. at 14. We recognize that this court sometimes incorporates claim limitations into its articulation of the idea to which a claim is directed. *See Enfish*, 2016 WL 2756255 at *6 (relying on a step of an algorithm corresponding to a means-plus-function limitation in defining the idea of a claim for step-one purposes). This case, unlike *Enfish*, presents a "close call[] about how to characterize what the claims are directed to." *See id.* at *8. The *Enfish* claims, understood in light of their specific limitations, were unambiguously directed to an improvement in computer capabilities. *See id.* at *5. Here, in contrast, the claims and their specific limitations do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea. We therefore defer our consideration of the specific claim limitations' narrowing effect for step two.

We now turn to step two, and the search for an "inventive concept." The "inventive concept" may arise in one or more of the individual claim limitations or in the ordered combination of the limitations. *Alice*, 134 S. Ct.

at 2355. An inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer. *Id.* at 2358.

The district court looked at each limitation individually and noted that the limitations "local client computer," "remote ISP server," "Internet computer network," and "controlled access network accounts" are described in the specification as well-known generic computer components. *District Court Order*, 107 F. Supp. 3d at 654; *see* '606 patent, 1:58–2:12 (describing a prior art filtering system on a local client computer); *id.* at 2:36–45 (describing a prior art filtering system on an ISP server that uses "a single set of filtering criteria for all of their controlled-access end-users"). The district court also noted that a filtering system is described in the specification as "any type of code which may be executed" along with database entries. *District Court Order*, 107 F. Supp. 3d at 654; *see* '606 patent, 4:28–30 ("[I]t will be obvious to one of ordinary skill in the art that the filtering scheme can be any of a number of known-schemes, or hybrids thereof."). The district court then looked at the limitations collectively, and held that "[f]iltering software, apparently composed of filtering schemes and filtering elements, was well-known in the prior art," and "using ISP servers to filter content was well-known to practitioners." *District Court Order*, 107 F. Supp. 3d at 654. The district court thus concluded that BASCOM had not asserted adequately that the claims disclose an inventive concept because the limitations, "considered individually, or as an ordered combination, are no more than routine additional steps involving generic computer components and the Internet, which interact in well-known ways to accomplish the abstract idea of filtering Internet content." *Id.* at 655.

We agree with the district court that the limitations of the claims, taken individually, recite generic computer,

network and Internet components, none of which is inventive by itself.  BASCOM does not assert that it invented local computers, ISP servers, networks, network accounts, or filtering.  Nor does the specification describe those elements as inventive.

However, we disagree with the district court's analysis of the ordered combination of limitations.  In light of *Mayo* and *Alice*, it is of course now standard for a § 101 inquiry to consider whether various claim elements simply recite "well-understood, routine, conventional activit[ies]."  *Alice*, 134 S. Ct. at 2359.  The district court's analysis in this case, however, looks similar to an obviousness analysis under 35 U.S.C. § 103, except lacking an explanation of a reason to combine the limitations as claimed.  The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art.  As is the case here, an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.

The inventive concept described and claimed in the '606 patent is the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user.  This design gives the filtering tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP server.  BASCOM explains that the inventive concept rests on taking advantage of the ability of at least some ISPs to identify individual accounts that communicate with the ISP server, and to associate a request for Internet content with a specific individual account.  '606 patent at 4:35–38 ("FIG. 3 shows the ISP server 100 process for accepting a log-in request 200, the ISP server 100 first verifies 201 whether the user is a registered subscriber."); *id.* at 5:60–62 ("In the TCP/IP protocol, each Internet access request or 'packet' includes the [website] from which content is requested."); Oral Argument, 17:30–17:50 (counsel for BASCOM agreeing that the ISP server

is able to associate individual accounts with website requests because, "due to the TCP/IP protocol, the server is able to recognize the address of the particular user"). According to BASCOM, the inventive concept harnesses this technical feature of network technology in a filtering system by associating individual accounts with their own filtering scheme and elements while locating the filtering system on an ISP server. *See Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010) ("[I]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act."). On this limited record, this specific method of filtering Internet content cannot be said, as a matter of law, to have been conventional or generic.

The claims do not merely recite the abstract idea of filtering content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components. Such claims would not contain an inventive concept. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (reasoning that the use of the Internet to verify a credit card transaction does not meaningfully add to the abstract idea of verifying the transaction). Nor do the claims preempt all ways of filtering content on the Internet; rather, they recite a specific, discrete implementation of the abstract idea of filtering content. Filtering content on the Internet was already a known concept, and the patent describes how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content. As explained earlier, prior art filters were either susceptible to hacking and dependent on local hardware and software, or confined to an inflexible one-size-fits-all scheme. BASCOM asserts that the inventors recognized there could be a filter implementation versatile enough that it could be adapted to many different

users' preferences while also installed remotely in a single location. Thus, construed in favor of the nonmovant— BASCOM—the claims are "more than a drafting effort designed to monopolize the [abstract idea]." *Alice*, 134 S. Ct. at 2357. Instead, the claims may be read to "improve[] an existing technological process." *Id.* at 2358 (discussing the claims in *Diehr*, 450 U.S. 175).

This court's recent case law on step two of the *Alice* test further establishes the patent-eligibility of the claims before us. As one would expect, BASCOM attempts to analogize its claims to the claims in *DDR*, while distinguishing its claims from the claims in other cases, such as *Content Extraction* and *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013). In turn, AT&T attempts the opposite comparisons, distinguishing the '606 patent claims from the claims in *DDR*, and analogizing the claims with claims from other cases such as *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015), *Intellectual Ventures I*, and *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014).

Turning first to *DDR*, we held that DDR's patent claimed a technical solution to a problem unique to the Internet—websites instantly losing views upon the click of a link, which would send the viewer across cyberspace to another company's website. 773 F.3d at 1248–50. The claimed invention solved that problem in a particular, technical way by sending the viewer to a hybrid webpage that combined visual elements of the first website with the desired content from the second website that the viewer wished to access. *Id.* at 1257–59. The creation of this hybrid webpage that co-displays the look and feel of the first website with the desired content from the second website required a specific technical solution that did more than claim all implementations for retaining web viewers.

Although the invention in DDR's patent was engineered in the context of retaining potential customers, the invention was not claiming a business method *per se*, but was instead claiming a technical way to satisfy an existing problem for website hosts and viewers. Similarly, although the invention in the '606 patent is engineered in the context of filtering content, the invention is not claiming the idea of filtering content simply applied to the Internet. The '606 patent is instead claiming a technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way) to filter content on the Internet that overcomes existing problems with other Internet filtering systems. By taking a prior art filter solution (one-size-fits-all filter at the ISP server) and making it more dynamic and efficient (providing individualized filtering at the ISP server), the claimed invention represents a "software-based invention[] that improve[s] the performance of the computer system itself." *See* Brief for United States as *Amicus Curiae* in Support of Respondents at 30–31, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) (No. 13-298), 2014 WL 828034.

Turning next to *OIP*, the claims at issue in that case were directed to the abstract idea of offer-based price optimization which was implemented by "'sending a first set of electronic messages over a network to devices,' the devices being 'programmed to communicate,' storing test results in a 'machine-readable medium,' and 'using a computerized system . . . to automatically determine' an estimated outcome and setting a price." 788 F.3d at 1363. In other words, the claims simply required the performance of the abstract idea of offer-based price optimization on generic computer components using conventional computer activities. The intrinsic record in *OIP* confirmed that the invention was simply the generic automation of traditional price-optimization techniques. *Id.* Unlike the claims in the '606 patent, the patent in *OIP*

was not limited to a specific technical solution of the abstract idea.

The other cases BASCOM and AT&T discuss similarly claim an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way. The claims in *Intellectual Ventures I* preempted all use of the claimed abstract idea on "the Internet, on a generic computer." 792 F.3d at 1371. The claims in *Content Extraction* preempted all use of the claimed abstract idea on well-known generic scanning devices and data processing technology. 776 F.3d at 1348. The claims in *Ultramercial* preempted all use of the claimed abstract idea on the Internet. 772 F.3d at 715–16. And the claims in *Accenture* preempted all use of the claimed abstract idea on generic computer components performing conventional activities. 728 F.3d at 1344–45. Our decisions further explained that simply because some of the claims narrowed the scope of protection through additional "conventional" steps for performing the abstract idea, they did not make those claims any less abstract. *See, e.g.*, *Ultramercial*, 772 F.3d at 715 ("We conclude that the limitations of the '545 claims do not transform the abstract idea that they recite into patent-eligible subject matter because the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity."). As explained above, construed in favor of BASCOM as they must be in this procedural posture, the claims of the '606 patent do not preempt the use of the abstract idea of filtering content on the Internet or on generic computer components performing conventional activities. The claims carve out a specific location for the filtering system (a remote ISP server) and require the filtering system to give users the ability to customize filtering for their individual network accounts.

## Conclusion

While the claims of the '606 patent are directed to the abstract idea of filtering content, BASCOM has adequately alleged that the claims pass step two of *Alice's* two-part framework. BASCOM has alleged that an inventive concept can be found in the ordered combination of claim limitations that transform the abstract idea of filtering content into a particular, practical application of that abstract idea. We find nothing on this record that refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6). We therefore vacate the district court's order granting AT&T's motion to dismiss under FRCP 12(b)(6) and remand so that the case may proceed.

**VACATED AND REMANDED**

## Costs

No costs.

# United States Court of Appeals
# for the Federal Circuit

———————————

**BASCOM GLOBAL INTERNET SERVICES, INC.,**
*Plaintiff-Appellant*

**v.**

**AT&T MOBILITY LLC, AT&T CORP.,**
*Defendants-Appellees*

———————————

2015-1763

———————————

Appeal from the United States District Court for the Northern District of Texas in No. 3:14-cv-03942-M, Judge Barbara M.G. Lynn.

———————————

NEWMAN, *Circuit Judge*, concurring in the result.

I agree with the court that the claims of the Bascom patent are eligible for participation in the system of patents. Thus the case requires remand to the district court, so that the rules and conditions of patentability can be applied to the Bascom claims. However, it has become increasingly apparent, as various factual situations have been brought into Section 101 challenges, that these new litigation opportunities have led to judicial protocols that are time-consuming and usually unnecessary. As this case illustrates, these cumbersome procedures for separate determinations of patent eligibility and patentability have added to the cost and uncertainty of patent-supported commerce, with no balancing benefit.

2        BASCOM GLOBAL INTERNET v. AT&T MOBILITY LLC

I write separately to urge a more flexible approach to the determination of patent eligibility, for the two-step protocol for ascertaining whether a patent is for an "abstract idea" is not always necessary to resolve patent disputes. There is no good reason why the district court should be constrained from determining patentability, instead of eligibility based on "abstract idea," when the patentability/validity determination would be dispositive of the dispute.

That is, instead of an initial evidentiary procedure for determination of eligibility at trial and appeal, followed by another cycle of patentability litigation when eligibility is found, initial decision directed to patentability may resolve or moot any issue of eligibility. Initial determination of eligibility often does not resolve patentability, whereas initial determination of patentability issues always resolves or moots eligibility.

## A

### *Section 101 defines patent-eligible subject matter as any new and useful process, machine, manufacture, or composition of matter*

Section 101 states, in broad terms, the subject matter eligible to participate in the system of patents:

**35 U.S.C. § 101. Inventions patentable—** Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

Discoveries and inventions that are within the statutory categories are eligible for patenting, upon compliance with the conditions of Title 35. The Court has recognized the breadth of subject matter implemented by Section 101, stating:

> In choosing such expansive terms . . . modified by the comprehensive "any," Congress plainly contemplated that the patent laws would be given wide scope.

*Diamond v. Chakrabarty,* 447 U.S. 303, 308 (1980).

An important aspect of Title 35 is that it discarded the judge-made usage of "invention" and "flash of creative genius," and replaced it with the statutory standard of unobviousness. "Nowhere in the entire act is there any reference to a requirement of 'invention' and the drafters did this deliberately in an effort to free the law and lawyers from bondage to that old and meaningless term." Giles S. Rich, *Principles of Patentability*, 28 GEO. WASH. L. REV. 393, 405 (1960).

On this history, the emphasis on eligibility has led to erratic implementation in the courts. An example is seen in this case, where the district court and this court differ in their view of "inventive concept" for the Bascom patent. I propose returning to the letter of Section 101, where eligibility is recognized for "any new and useful process, machine, manufacture, or composition of matter." It follows that if any of these classes is claimed so broadly or vaguely or improperly as to be deemed an "abstract idea," this could be resolved on application of the requirements and conditions of patentability. This determination would avoid resolving an undefined "inventive concept" applied to eligibility.

Although there is concern that broad claims may preempt development by others of improvements and variants of a broad invention, and limiting patentable scope may restrict preemption, it is not the policy of patent law to permit only narrow claims when an inventor has made a new, broad invention. When an invention is new and unobvious and described and enabled, commensurate patent rights are not barred on policy grounds.

# B

## *Patentability v. Eligibility*

A new and useful process or machine or manufacture or composition of matter is not an abstract idea, and if the claims are deemed to be so broad as to be abstract, application of the requirements of patentability is a direct path to resolution of validity disputes. Claims that are imprecise or that read on prior art or that are unsupported by description or that are not enabled raise questions of patentability, not eligibility.

35 U.S.C. § 112(a) requires a written description in "full, clear, concise, and exact terms," and § 112(b) requires "claims particularly pointing out and distinctly claiming the subject matter" of the invention. The process, machine, manufacture, or composition of Section 101 must comply with Section 112. Subject matter that complies with Section 112 averts the generality or vagueness or imprecision or over-breadth that characterize abstract ideas. These are conditions of patentability, not of eligibility. The "conditions and requirements of this title" weed out the abstract idea.

The Court recognized that "all inventions at some level embody, use, reflect, rest upon, or apply . . . abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). I have come upon no guide to when a claim crosses the boundary between unacceptable abstractness and acceptable specificity. Experience with this aspect demonstrates its imprecision. This conundrum is resolved on application of the criteria of patentability. Nor is this a new observation: "precedent illustrates that pragmatic analysis of section 101 is facilitated by considerations analogous to those of section 102 and 103 as applied to the particular case." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015) (referring to the specification and prior art to determine abstractness of claims).

In this case, as the panel majority recites, the district court found that "filtering software, apparently composed of filtering schemes and filtering elements, was well-known in the prior art," Maj. Op. at 9–10, 14, citing *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 107 F. Supp. 3d 639, 654 (N.D. Tex. 2015). The district court found reason to combine known selective filtration procedures. *Id.* AT&T argues that these findings, as they relate to patentability, are correct. Bascom states that it did not have a full opportunity to present evidence concerning patentability. Accepting Bascom's position, remand is appropriate.

## C

### *AT&T's motion to dismiss*

The district court held that "the Court looks at the 'elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements [beyond those that recite the abstract idea of filtering content] 'transform the nature of the claim' into a patent-eligible application.'" *BASCOM*, 107 F. Supp. 3d at 654. The district court found that the Bascom filtration method was not an "inventive concept" and held that the Bascom claims were not eligible subject matter under Section 101. *Id.* at 644.

In arguing "inventive concept," both sides presented arguments that would also be relevant to patentability. These arguments are repeated on this appeal. AT&T, supporting the "abstract idea" position on which it prevailed before the district court, argues that content filtration was a generally known concept, and thus was an "abstract idea" under *Alice* step one. AT&T argues that the Bascom filtration method is not an "inventive concept" under step two. AT&T also argues that the Bascom claims are invalid under Sections 103 and 112.

Bascom states that for issues under Sections 103 and 112, additional evidence would be provided, evidence not needed for response to a motion to dismiss for abstractness. We agree that Bascom must be accorded the opportunity to litigate these issues directly, rather than as overflow from the eligibility debate.

On appellate review, I agree with the majority that the Bascom claims contain an "inventive concept" in the claims' "ordered combination of limitations," and that this establishes eligibility. In the district court, the only issue that was finally decided is that of eligibility. Thus remand is the appropriate next step. However, I again point to the increased efficiency, and savings in cost and time, by direct resolution of patentability. The Court's rulings in *Alice* and *Mayo* do not require that every broadly claimed patent must be treated in two separate litigation procedures, if charged with abstractness.

While the two-step protocol helps to decide whether a particular claim is "eligible" for patenting, we should clarify the district court's authority to resolve the issues of patent validity directly. Direct application to the Bascom claims of the law of sections 102, 103, or 112, could have resolved this dispute in one litigation cycle of trial and appeal, instead of the repeated effort now required.

In sum, when evidence of patentability is needed or presented to resolve a challenge to eligibility of claims to a new method or machine or manufacture or composition, the district court and the parties should have the flexibility to resolve patentability at this threshold. If the claims are unpatentable, any issue of abstractness, however defined, is mooted. And if the subject matter is patentable, it is not an abstract idea. We should clarify that such expediency is an available response to challenges on the ground of "abstract idea."

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on __July 8, 2016__
by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

Aaron M. Panner                                    /s/ Aaron M. Panner

Name of Counsel                              Signature of Counsel

| | |
|---|---|
| Law Firm | Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C. |
| Address | 1615 M Street, N.W., Suite 400 |
| City, State, Zip | Washington, D.C. 20036 |
| Telephone Number | 202-326-7921 |
| Fax Number | 202-326-7999 |
| E-Mail Address | apanner@khhte.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields